IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| | | Case No. 3:07cr196 |
| vs. | : | |
| | | JUDGE WALTER HERBERT RICE |
| ROGER DALE TRENT, | : | |
| Defendant. | : | |

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO
DISMISS INDICTMENT (DOC. #22), AS SUPPLEMENTED BY
DOC. #31; DIRECTIVE TO GOVERNMENT'S COUNSEL

Defendant Roger Dale Trent ("Defendant" or "Trent") is charged in the Indictment (Doc. #12) with one count of traveling in interstate commerce and knowingly failing to register as a sex offender, as required by the Sex Offender Registration and Notification Act ("SORNA"), in violation of 18 U.S.C. § 2250(a). In its entirety, the Indictment provides:

> Between on or about November 2, 2007 and November 25, 2007, the defendant, ROGER DALE TRENT, an individual required to register under the Sex Offender Registration and Notification Act, traveled in interstate commerce to the Southern District of Ohio and did knowingly fail to register and update a registration as required by the Sex Offender Registration and Notification Act.
> In violation of Title 18, United States Code, Section 2250(a).

Doc. #12.  Section 2250(a) provides:

> (a) <u>In general</u>.—Whoever—
>> (1) is required to register under the Sex Offender Registration and Notification Act;
>> (2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
>> (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
>> (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;
>
> shall be fined under this title or imprisoned not more than 10 years, or both.[1]

This case is now before the Court on the Defendant's Motion to Dismiss Indictment (Doc. #22). Therein, Trent has presented four arguments in support of his request for dismissal, to wit: 1) Congress exceeded the authority granted to it by the Commerce Clause of the United States Constitution by enacting § 2250(a), because the statute lacks a sufficient nexus with interstate commerce; 2) the terms of the SORNA clearly indicate that the statute did not apply to him, because Ohio had not implemented the SORNA at the time of the alleged offense; 3) he was not obligated to register, because the Government failed to give him notice of his duty to register in violation of the statute and the Due Process Clause of the

---

[1]Section 2250(a) does not expressly apply to sex offenders who, like the Defendant, have been convicted of state law, sex offenses. However, as is discussed below, § 113 of SORNA, 42 U.S.C. § 16913, imposes a registration requirement on all sex offenders. A sex offender is defined as an individual who has been convicted of a sex offense. 42 U.S.C. § 16911(1). The term "sex offense," in turn, is defined to include a criminal offense involving a sexual act or sexual conduct or certain conduct with a minor. <u>Id</u>. at § 16911(5). Criminal offenses include state offenses. <u>Id</u>. at § 16911(6). Therefore, an individual convicted of a sex offense under state law satisfies the element of the offense with which the Defendant charged, set forth in § 2250(a)(1), that he is "required to register under the [SORNA]."

Fifth Amendment;[2] and 4) Congress improperly delegated the legislative function of determining whether the statute would be applied retroactively to the Attorney General.  The Government has filed a memorandum opposing Defendant's motion.  See Doc. #30.  As a means of analysis, the Court will address the Defendant's four arguments in the above order.  In addition, the Defendant has filed a Supplement to Motion to Dismiss Indictment (Doc. #31), wherein he argues that Congress violated the Commerce Clause by enacting 42 U.S.C. § 16913(a), the provision of the SORNA under which he was required to register as a sex offender.  The Court will address this additional argument in the context of ruling on Trent's Commerce Clause challenge to § 2250(a).

1.  Commerce Clause

In support of his argument that § 2250(a) violates the Commerce Clause,[3] Trent relies primarily on United States v. Lopez, 514 U.S. 549 (1995).  In Lopez, the Supreme Court concluded that Congress had exceeded its authority under the Commerce Clause by enacting the Gun Free School Zones Act of 1990, 18 U.S.C. § 922(q), which prohibited the possession of a firearm in a school zone.  The Lopez Court initially set forth the categories of activity that Congress may regulate under the Commerce Clause:

---

[2]Since the Due Process Clause contained in the Fourteenth Amendment applies only to the states and their political subdivisions (Newsom v. Vanderbilt University, 653 F.2d 1100, 1113 (6th Cir. 1981), that constitutional provision is inapplicable herein.

[3]The Commerce Clause, Art. I, § 8, cl. 3, authorizes Congress "[t]o regulate Commerce … among the several States…."

> [W]e have identified three broad categories of activity that Congress may regulate under its commerce power. Perez [v. United States, 402 U.S. 146, 150 (1971)]; see also Hodel [v. Virginia Surface Mining & Reclamation Assn., Inc., 452 U.S. 264, 276-277 (1981)]. First, Congress may regulate the use of the channels of interstate commerce. See, e.g., [United States v.] Darby, 312 U.S. [100, 114 (1941)]; Heart of Atlanta Motel, Inc. [v. United States, 379 U.S. 241, 256 (1964)] ("'[T]he authority of Congress to keep the channels of interstate commerce free from immoral and injurious uses has been frequently sustained, and is no longer open to question.'" (quoting Caminetti v. United States, 242 U.S. 470, 491 (1917))). Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. See, e.g., Shreveport Rate Cases, 234 U.S. 342 (1914); Southern R. Co. v. United States, 222 U.S. 20 (1911) (upholding amendments to Safety Appliance Act as applied to vehicles used in intrastate commerce); Perez, supra, at 150 ("[F]or example, the destruction of an aircraft (18 U.S.C. § 32), or … thefts from interstate shipments (18 U.S.C. § 659)"). Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, [NLRB v.] Jones & Laughlin Steel Corp., 301 U.S. [1, 37 (1937)], i.e., those activities that substantially affect interstate commerce, [Maryland v.] Wirtz, [392 U.S. 183, 196, n. 27 (1968)].

Id. at 558-59. The Lopez Court briefly addressed the first two categories, holding that neither supported the statute in question, and turned to the third. Id. at 559. In holding that the Gun Free School Zones Act of 1990 did not substantially affect interstate commerce, the Lopez Court noted, inter alia, that the statute lacked a "jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." Id. at 561.

The Defendant has also mentioned United States v. Morrison, 529 U.S. 598 (2000), wherein the Supreme Court held that Congress had exceeded its power under the Commerce Clause, by enacting 42 U.S.C. § 13981. That statute was the provision of the Violence Against Women Act of 1994 ("VAWA"), which afforded a civil remedy to the victims of violence motivated by gender. In the

course of its decision, the Morrison Court noted that the statute at issue did not contain a jurisdictional element. "Like the Gun-Free School Zones Act at issue in Lopez, § 13981 contains no jurisdictional element establishing that the federal cause of action is in pursuance of Congress' power to regulate interstate commerce." Id. at 613. The Morrison Court also contrasted the absence of such an element from § 13981, with the inclusion of a jurisdictional element contained in the criminal provision of the VAWA, 18 U.S.C. § 2261(a), writing:[4]

> The Courts of Appeals have uniformly upheld this criminal sanction as an appropriate exercise of Congress' Commerce Clause authority, reasoning that "[t]he provision properly falls within the first of Lopez's categories as it regulates the use of channels of interstate commerce-i.e., the use of the interstate transportation routes through which persons and goods move." United States v. Lankford, 196 F.3d 563, 571-572 (C.A.5 1999) (collecting cases) (internal quotation marks omitted).

Id. at 613 n. 5.

However, since neither of those Supreme Court decisions addressed the constitutionality of § 2250(a) under the Commerce Clause, given that they were decided before that statute was enacted, Defendant places primary reliance on

---

[4]Section 2261(a) provides:
   (a) Offenses.—
   (1) Travel or conduct of offender.—A person who travels in interstate or foreign commerce or enters or leaves Indian country or within the special maritime and territorial jurisdiction of the United States with the intent to kill, injure, harass, or intimidate a spouse, intimate partner, or dating partner, and who, in the course of or as a result of such travel, commits or attempts to commit a crime of violence against that spouse, intimate partner, or dating partner, shall be punished as provided in subsection (b).
   (2) Causing travel of victim.—A person who causes a spouse, intimate partner, or dating partner to travel in interstate or foreign commerce or to enter or leave Indian country by force, coercion, duress, or fraud, and who, in the course of, as a result of, or to facilitate such conduct or travel, commits or attempts to commit a crime of violence against that spouse, intimate partner, or dating partner, shall be punished as provided in subsection (b).

United States v. Powers, 544 F. Supp.2d 1331 (M.D.Fla. 2008). Among the dozens of District Courts to address the issue, Powers is the only such court to conclude that § 2250(a) violates the Commerce Clause. Therein, the court rejected the proposition that the jurisdictional element set forth in § 2250(a) saved it from challenge under the Commerce Clause. For reasons which follow, this Court rejects the result reached in Powers and joins the majority of District Courts, thus concluding that Congress did not exceed its authority under the Commere Clause by enacting § 2250(a).[5]

Section 2250(a) contains a jurisdictional element, applying, in addition to individuals convicted of certain federal offenses, only to those required to register by SORNA who have traveled in interstate commerce. The inclusion of such a jurisdictional element in the statute causes this Court to conclude that the statute does not violate the Commerce Clause. Although no appellate court has addressed this question, such courts have uniformly held that including in a criminal statute the requirement that the defendant travel in interstate commerce, as a jurisdictional element, is sufficient to defeat a Commerce Clause challenge. For instance, in United States v. Tykarsky, 446 F.3d 458 (3d Cir. 2006), the Third Circuit addressed a Commerce Clause challenge to 18 U.S.C. § 2423(b), which prohibits

---

[5]No appellate court has addressed the question of whether § 2250(a) violates the Commerce Clause. The following are some of the decisions in which District Courts have rejected challenges under that constitutional provision to § 2250(a): United States v. Fuller, 2008 WL 2437869 (N.D.N.Y. 2008); United States v. Zuniga, 2008 WL 2184118 (D.Neb. 2008); United States v. Cochran, 2008 WL 2185427 (E.D.Okla. 2008); United States v. David, 2008 WL 2045830 (W.D.N.C. 2008); United States v. Ditomasso, — F. Supp.2d —, 2008 WL 1994866 (D.R.I. 2008); United States v. Holt, 2008 WL 1776495 (S.D.Iowa 2008); United States v. Akers, 2008 WL 914493 (N.D.Ind. 2008); United States v. Utesch, 2008 WL 656066 (E.D.Tenn. 2008); United States v. Mason, 510 F. Supp.2d 923, 933 (M.D.Fla.2007).

interstate travel for the purpose engaging of engaging in certain sexual conduct with a minor. The court rejected that challenge, because the jurisdictional element in the statute, traveling in interstate commerce, meant that § 2423(b) was a valid regulation of the uses of the channels of interstate commerce, the first category of activity which the Lopez Court recognized Congress can regulate under the Commerce Clause. Id. at 470. Accord United States v. Bredimus, 352 F.3d 200, 205 (5th Cir. 2003), cert. denied, 541 U.S. 1044 (2004); United States v. Han, 230 F.3d 560, 562-63 (2d Cir. 2000). Similarly, as the Morrison Court recognized (529 U.S. 613 n. 5), the Fifth Circuit has held that prosecutions under 18 U.S.C. § 2261(a) comport with the Commerce Clause, since that statute regulates channels of commerce, Lopez's first category of permissible regulation under that constitutional provision. United States v. Lankford, 196 F.3d 563, 571-572 (5th Cir. 1999), cert. denied, 529 U.S. 1119 (2000). The Lankford court noted that other courts, including the Sixth Circuit, had reached the same conclusion:

> Other courts confronted with challenges to various provisions within [18 U.S.C. § 2261(a)] have similarly found that those provisions fall within Lopez's first category and are valid exercises of Congress' Commerce Clause power. See United States v. Page, 167 F.3d 325, 334 (6th Cir. 1999) ("Because the triggering factor of § 2261(a)(2) is the movement of the victim across state lines, this statute falls into the first category and is a valid exercise of Congress's power to regulate the use of the channels of interstate commerce.") (internal quotation marks omitted); United States v. Gluzman, 154 F.3d 49, 50 (2d Cir.1998) (adopting holding of court below that § 2261(a)(1) is a valid exercise of Congress' Commerce Clause power), cert. denied, 526 U.S. 1020 (1999); United States v. Von Foelkel, 136 F.3d 339, 341 (2d Cir. 1998) (upholding § 2262(a)(1) as it falls within Lopez's first category); United States v. Wright, 128 F.3d 1274, 1276 (8th Cir. 1997)(upholding § 2262(a)(1) as it "falls within Congress's authority to 'keep the channels of interstate commerce free from immoral and injurious uses.'") (quoting Caminetti [v. United States, 242 U.S. 470, 491 (1917)]), cert. denied, 523 U.S. 1053 (1998); United States v. Gluzman, 953 F. Supp. 84, 89 (S.D.N.Y. 1997)(upholding § 2261(a)(1) as it falls within Lopez's first category), aff'd, 154 F.3d 49 (2d Cir.1998).

Id. at 571-72. See also United States v. Henry, 429 F.3d 603, 619 (6th Cir. 2005) (holding that conviction for possession of ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g), is valid under the Commerce Clause, as long as the ammunition had previously moved in interstate commerce, even though the possession did not have a substantial affect on same).

Based upon the foregoing, this Court concludes that § 2250(a) is a valid regulation of the channels of commerce, the first category of permissible regulation under Lopez, and that, therefore, it does not violate the Commerce Clause. Accordingly, the Court overrules the Defendant's Motion to Dismiss Indictment (Doc. #22), to the extent that same is based upon that constitutional provision.

In his Supplement to Motion to Dismiss Indictment (Doc. #31), Defendant attempts to support his contention that his prosecution violates the Commerce Clause, by presenting an additional proposition, to wit: that 42 U.S.C. § 16913(a) violates the Commerce Clause, because that statutory provision requires every sex offender to register regardless of whether he has traveled in interstate commerce. Section 16913(a) provides that "[a] sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." According to Trent, the unconstitutionality of § 16913(a) prevents the Government from establishing the essential element of his charged violation of § 2250(a), that he was required by the SORNA to register, because § 16913(a) is the provision in the SORNA that imposes the registration requirement on sex offenders.

Given that he is alleged to have traveled in interstate commerce, Defendant must be mounting a facial challenge to § 16913(a). The Government argues that the Defendant is precluded from initiating such a challenge, because his alleged

- 8 -

travel in interstate commence renders § 16913(a) constitutional under the Commerce Clause when applied to him. See Doc. #32 at 9-11. For reasons which follow, this Court agrees.

A party mounting a facial challenge to a statute faces the difficult burden of establishing "that no set of circumstances exists under which the [a]ct would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987). Other federal courts have held that Salerno must be applied, when ruling on facial challenges to the constitutionality of a federal statute under the Commerce Clause. Rancho Viejo, LLC v. Norton, 323 F.3d 1062, 1077-78 (D.C. Cir. 2003), cert. denied, 540 U.S. 1218 (2004); United States v. Sage, 92 F.3d 101, 106 (2d Cir. 1996). Simply stated, Trent has not established that no set of circumstances exists under which § 16913(a) would be valid under the Commerce Clause. On the contrary, based upon this Court's above reasoning, rejecting Defendant's Commerce Clause challenge to § 2250(a), it would conclude that § 16913(a) can be validly applied to him, given that he is alleged to have traveled in interstate commerce. Accordingly, the Court overrules the Defendant's Motion to Dismiss Indictment (Doc. #22), to the extent that it is based on to the proposition set forth in Defendant's Supplement to Motion to Dismiss Indictment (Doc. #31).[6]

---

[6]Parenthetically, the two courts which have addressed the issue are split on whether § 16913(a) violates the Commerce Clause. Compare United States v. Waybright, — F. Supp.2d —, 2008 WL 2380946 (D.Mont. 2008) (holding that § 16913(a) violates the Commerce Clause), with United States v. Thomas, 534 F. Supp.2d 912, 920-22 (N.D.Iowa 2008) (reaching the opposite conclusion). In neither of those decisions did the court cite Salerno or address the principles established therein.

## 2.  SORNA Not Applicable, Since Ohio's Implementing Legislation Was Not In Effect When Defendant Allegedly Violated § 2250(a)

Defendant alternatively argues that the Court must dismiss this prosecution, given that the terms of the SORNA clearly indicate that the statute did not apply to him, because Ohio had not implemented the SORNA at the time of his alleged offense.  Before addressing that argument, the Court will briefly review the registration requirements set forth in that statute.

The registration requirements are set forth in § 113 of SORNA, Pub. L. 109-248, 120 Stat. 587, 593-94, which provides:

> (a) In general
> A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student.  For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.
> (b) Initial registration
> The sex offender shall initially register--
> (1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or
> (2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.
> (c) Keeping the registration current
> A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry.  That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.
> (d) Initial registration of sex offenders unable to comply with subsection (b) of this section
> The Attorney General shall have the authority to specify the applicability of the requirements of this title to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction,

>and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

42 U.S.C. § 16913. That statutory provision became effective on July 27, 2006. The Attorney General has adopted an interim regulation, effective on February 28, 2007 (see 72 Fed. Reg. 8894 (February 28, 2007)), which provides that "[t]he requirements of the Sex Offender Registration and Notification Act apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act." 28 C.F.R. § 28.3.

In support of this argument, the Defendant relies on § 16913(d), which provides, in part, "[t]he Attorney General shall have the authority to specify the applicability of the requirements of this title to sex offenders convicted before … its implementation in a particular jurisdiction …." According to Trent, the Attorney General has indicated that SORNA does not apply until implemented by a particular jurisdiction. He also contends that, since the legislation enacted by Ohio to implement the SORNA did not become effective until January 1, 2008, after he is alleged to have committed the charged violation of § 2250(a), it would violate the Ex Post Facto Clause of the United States Constitution to punish him for failing to register. For reasons which follow, this Court is unable to agree with his predicate assertion, i.e., that the Attorney General has indicated that the SORNA does not apply in a particular state until that state has passed implementing legislation. Therefore, this Court rejects this basis for dismissal, without addressing the Defendant's contentions concerning the effective date of the Ohio legislation or the Ex Post Facto Clause.

To support of his assertion that the Attorney General has indicated that the SORNA does not apply in a particular state, until that state has passed implementing legislation, Defendant relies on Guidelines for Sexual Offender Registration and Notification ("Guidelines"), issued by the Attorney General on May 30, 2007.[7]  See 72 Fed. Reg. 30210, et seq.  In particular, Trent cites the following passage from those Guidelines:

> With respect to sex offenders with pre-SORNA or pre-SORNA-implementation convictions who remain in the prisoner, supervision, or registered sex offender populations at the time of implementation …[,] jurisdictions should endeavor to register them in conformity with SORNA as quickly as possible, including fully instructing them about the SORNA requirements, obtaining signed acknowledgments of such instructions, and obtaining and entering into the registry all information about them required under SORNA.

72 Fed. Reg. 30228.  Reading that portion of the Guidelines, the Court is compelled to conclude that the premise which Defendant attributes to them is not expressly set forth therein.  In contrast, however, the Guidelines also provide:

> As discussed in Part II.C of these Guidelines, SORNA applies to all sex offenders, including those convicted of their registration offenses prior to the enactment of SORNA or prior to particular jurisdictions' incorporation of the SORNA requirements into their programs.

Id.

Given that the Guidelines expressly state that the SORNA applies to sex offenders convicted "prior to particular jurisdictions' incorporation of the SORNA requirements into their programs," this Court rejects his argument that the Attorney General indicated therein that the SORNA does not apply in a particular

---

[7]Thus, the Guidelines were issued before the dates, between on or about November 2, 2007, and November 25, 2007, upon which Trent is alleged to have violated § 2250(a).

- 12 -

state, until that state has passed implementing legislation. Moreover, courts addressing the issue have overwhelming held that SORNA is effective before a state has enacted implementing legislation. See e.g., United States v. Ditomasso, — F. Supp.2d —, 2008 WL 1994866 (D.R.I. 2008); United States v. Gould, 526 F. Supp.2d 538, 542 (D.Md. 2007).

Accordingly, the Court overrules Defendant's Motion to Dismiss Indictment (Doc. #22), as it relates to the proposition that the terms of the SORNA clearly indicate that the statute did not apply to him, because Ohio had not implemented the SORNA at the time of his alleged offense.

### 3. Lack of Notice

The Defendant argues that the Court must dismiss the Indictment, because the Government failed to notify him of his obligation to register under the SORNA. He contends that this lack of notification both violated a provision of that statute and constituted a deprivation of due process. As a means of analysis, the Court will address those two arguments in that order.

Initially, Trent argues that he cannot be prosecuted for violating § 2250(a), because he was not obligated to register until informed of that obligation by the Attorney General. In particular, the Defendant relies on § 117 of the SORNA, 42 U.S.C. § 16917, which is entitled "duty to notify sex offenders of registration requirements and to register." According to the Defendant, the duty to notify sex offenders of their duty to register was recognized by the courts in United States v. Barnes, 2007 WL 2119895 (S.D.N.Y. 2007) and United States v. Smith, 528 F. Supp. 2d 615 (S.D.W.Va. 2007). Since neither of those decisions addressed the issue presented by the Defendant with this branch of his motion, the Court does

- 13 -

not find them to support the proposition that he cannot be prosecuted, because he has not been notified of his duty to register. Briefly, in Barnes, the court concluded that the defendant's prosecution under § 2250(a) would violate the Due Process Clause of the Fifth Amendment, because he was alleged to have committed the offense on the day, February 28, 2007, that the Attorney General adopted the rule (28 C.F.R. § 28.3), making that statute applicable to sex offenders convicted of offenses occurring before the date the SORNA was adopted. In Smith, the court concluded that the SORNA did not apply to interstate travel by sex offenders, before that rule had been adopted.[8] Rather, this Court will follow the decisions by the courts which have held that, when the defendant in a prosecution for violating § 2250(a) was notified by state authorities of his obligation to register as a sex offender under state law, the lack of notice in accordance with § 16917 is not a defense to that prosecution. See e.g., United States v. LeTourneau, 534 F. Supp.2d 718, 722 (S.D.Tex. 2008); United States v. Gould, 526 F. Supp.2d 538 (D.Md. 2007); United States v. Adkins, 2007 WL 4335457 (N.D.Ind. 2007); United States v. Marcantonio, 2007 WL 2230773 (W.D.Ark. 2007); United States v. Lovejoy, 516 F. Supp.2d 1032, 1037 (D.N.D. 2007).

Herein, the Government has attached five unauthenticated documents to its Memorandum in Opposition (Doc. #30), which it contends demonstrate that the Defendant has been notified of his obligation to register as a sex offender under state law.[9] Those documents demonstrate that the Defendant was informed that

---

[8]Parenthetically, this Court reached the same conclusion in United States v. Walters, Case No. 3:07cr165 (S.D.Ohio).

[9]Although the Defendant has not questioned the authenticity of those documents, the Court directs the Government to submit affidavits or declarations, within 15 days from date, authenticating those documents by demonstrating that "the matter

- 14 -

he was obligated to register as a sex offender under the laws of Kentucky and Indiana. Accordingly, the Court rejects Trent's premise that this prosecution must be dismissed, because § 16917 was violated as a result of the failure to notify him of his obligation to register under the SORNA.

In addition, Trent relies upon Lambert v. California, 355 U.S. 225 (1957), to support this branch of his motion. In Lambert, the Supreme Court held that the defendant's conviction for violating a Los Angeles municipal ordinance constituted a deprivation of due process. Under that ordinance, any person convicted of an offense punishable as a felony under California law was required to register with the Chief of the Los Angeles Police Department, if he or she remained in the city for more than five days or visited it on more than five days in any 30-day period. In concluding that there had been a deprivation of due process, the Lambert Court reasoned:

> We do not go with Blackstone in saying that 'a vicious will' is necessary to constitute a crime, 4 Bl. Comm. *21, for conduct alone without regard to the intent of the doer is often sufficient. There is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition. See Chicago, B. & Q.R. Co. v. United States, 220 U.S. 559, 578. But we deal here with conduct that is wholly passive-mere failure to register. It is unlike the commission of acts, or the failure to act under circumstances that should alert the doer to the consequences of his deed. Cf. Shevlin-Carpenter Co. v. State of Minnesota, 218 U.S. 57; United States v. Balint, 258 U.S. 250; United States v. Dotterweich, 320 U.S. 277, 284. The rule that 'ignorance of the law will not excuse' (Shevlin-Carpenter Co. v. State of Minnesota, supra, 218 U.S. at page 68) is deep in our law, as is the principle that of all the powers of local government, the police power is 'one of the least limitable.' District of Columbia v. Brooke, 214 U.S. 138, 149. On the other hand, due process places some limits on its exercise. Engrained in our concept of due process is the requirement of notice. Notice is sometimes essential so that the citizen has the chance to defend charges. Notice is required before property

---

in question is what its proponent claims." Fed R. Evid. 901(a).

> interests are disturbed, before assessments are made, before penalties are assessed. Notice is required in a myriad of situations where a penalty or forfeiture might be suffered for mere failure to act.  Recent cases illustrating the point are Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306; Covey v. Town of Somers, 351 U.S. 141; Walker v. City of Hutchinson, 352 U.S. 112.  These cases involved only property interests in civil litigation.  But the principle is equally appropriate where a person, wholly passive and unaware of any wrongdoing, is brought to the bar of justice for condemnation in a criminal case.
>
> Registration laws are common and their range is wide.  Cf. People of State of New York ex rel. Bryant v. Zimmerman, 278 U.S. 63; United States v. Harriss, 347 U.S. 612; United States v. Kahriger, 345 U.S. 22.  Many such laws are akin to licensing statutes in that they pertain to the regulation of business activities.  But the present ordinance is entirely different.  Violation of its provisions is unaccompanied by any activity whatever, mere presence in the city being the test.  Moreover, circumstances which might move one to inquire as to the necessity of registration are completely lacking.  At most the ordinance is but a law enforcement technique designed for the convenience of law enforcement agencies through which a list of the names and addresses of felons then residing in a given community is compiled.  The disclosure is merely a compilation of former convictions already publicly recorded in the jurisdiction where obtained.  …  Where a person did not know of the duty to register and where there was no proof of the probability of such knowledge, he may not be convicted consistently with due process.  Were it otherwise, the evil would be as great as it is when the law is written in print too fine to read or in a language foreign to the community.

Id. at 228-30.

The registration requirement applicable to the Defendant herein is markedly different than that applicable to Ms. Lambert more than 50 years ago.  Convicted sex offenders are now commonly required to register, while there is no indication in Lambert that requiring convicted felons to register was at the time of that decision also commonly established.  On the contrary, the quotation from that decision indicates that such a practice was unusual.  Therefore, it is simply not reasonable to argue that the requirement that the Defendant register as a sex offender in 2007 is comparable to the registration requirement with which Ms. Lambert was

confronted in the mid-1950's. Consequently, this Court concludes that, unlike the statute in Lambert, § 2250(a) is not "entirely different" from criminal statutes, the obligations of which a defendant need not be personally informed to comport with due process. Indeed, it bears emphasis that the Jacob Wetterling Act of 1994, 42 U.S.C. § 14071, required sex offenders to register before the SORNA was adopted 12 years later. Accordingly, this Court joins with other courts in holding that Lambert does not support the proposition that a sex offender, charged with violating § 2250(a), is deprived of due process if not personally given notice of his obligation to register under the SORNA.[10] See e.g., United States v. Waybright, — F. Supp.2d —, 2008 WL 2380946 (D.Mont. 2008); United States v. David, 2008 WL 2045830 (W.D.N.C. 2008); United States v. Craft, 2008 WL 1882904 (D.Neb. 2008); United States v. LeTourneau, 534 F. Supp.2d 718, 722-23 (S.D.Tex. 2008).

Accordingly, the Court overrules Defendant's Motion to Dismiss Indictment (Doc. #22), as it relates to the proposition that the failure to notify him of his obligation to register under the SORNA violated that statute and deprived him of due process.

4. Delegation Doctrine

The Defendant argues that this Court must dismiss this prosecution, because the Congress violated the non-delegation doctrine, by delegating to the Attorney

---

[10] In addition, the Lambert Court concluded that the defendant had been without notice of her obligation to register, since she had offered proof of that "defense," which had been refused. 355 U.S. at 227. Herein, in contrast, Trent has not submitted or offered to submit proof that he was unaware of his obligation to register as a sex offender, when he traveled in interstate commerce to Ohio between November 2, 2007 and November 25, 2007.

General the authority to determine the retroactive effect of the SORNA.  See 42 U.S.C. § 16913(d) (providing, in part, that "[t]he Attorney General shall have the authority to specify the applicability of the requirements of this title to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction").  For reasons which follow, this Court does not agree.  The Court begins by examining the non-delegation doctrine.

That doctrine is an aspect of the separation of powers.  Mistretta v. United States, 488 U.S. 361, 371 (1989) (noting that the non-delegation doctrine "is rooted in the principle of separation of powers that underlies our tripartite system of Government").  Under the non-delegation doctrine, Congress "is not permitted to abdicate or to transfer to others the essential legislative functions with which it is vested."  Panama Refining Co. v. Ryan, 293 U.S. 388, 421 (1935).  In Mistretta, the Court explained the non-delegation doctrine:

> We also have recognized, however, that the separation-of-powers principle, and the nondelegation doctrine in particular, do not prevent Congress from obtaining the assistance of its coordinate Branches.  In a passage now enshrined in our jurisprudence, Chief Justice Taft, writing for the Court, explained our approach to such cooperative ventures: "In determining what [Congress] may do in seeking assistance from another branch, the extent and character of that assistance must be fixed according to common sense and the inherent necessities of the government co-ordination."  J.W. Hampton, Jr., & Co. v. United States, 276 U.S. 394, 406 (1928).  So long as Congress "shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform, such legislative action is not a forbidden delegation of legislative power."  Id., at 409.

488 U.S. at 372.  Two cases decided in 1935, invalidating portions of the National Recovery Act, Panama Refining and A.L.A. Schechter Poultry Corp. v. United States, 295 U.S. 495 (1935), were the first and only instances in which the United States Supreme Court used the non-delegation doctrine to invalidate a statute.

- 18 -

Since then, the Supreme Court has applied broad standards, in holding that statutes do not violate that doctrine.  See e.g., FPC v. Hope Natural Gas Co., 320 U.S. 591 (1944) (upholding delegation to Federal Power Commission to determine just and reasonable rates); National Broadcasting Co. v. United States, 319 U.S. 190 (1943) (upholding delegation to Federal Communications Commission to regulate broadcast licensing "as public interest, convenience, or necessity" require).  In Mistretta, the Court concluded that Congress had not violated the non-delegation doctrine by delegating to the United States Sentencing Commission the authority to determine the appropriate sentence, within the statutorily established range, for federal criminal offenses.  Thus, other than two decisions in 1935, before the "switch in time save[d] nine," the Supreme Court has not invalidated any statute under the non-delegation doctrine.

All courts to have addressed the issue herein have concluded that Congress did not violate the non-delegation doctrine by delegating such authority to the Attorney General.  See e.g., United States v. Cochran, 2008 WL 2185427 (W.D.Okla. 2008); United States v. David, 2008 WL 2045830 (W.D.N.C. 2008); United States v. Utesch, 2008 WL 656066 (E.D.Tenn. 2008); United States v. Howell, 2008 WL 313200 (N.D.Iowa 2008); United States v. LeTourneau, 534 F. Supp.2d 718, 724-25 (S.D.Tex. 2008); United States v. Gill, 520 F. Supp.2d 1341, 1349 (D.Utah 2007); United States v. Madera, 474 F. Supp.2d 1257, 1261 (M.D.Fla. 2007).  This Court finds that the result reached by those courts to be persuasive and similarly concludes that Congress did not violate the non-delegation doctrine by authorizing the Attorney General to determine the retroactive effect of the SORNA.

Accordingly, the Court overrules Defendant's Motion to Dismiss Indictment (Doc. #22), as it relates to the non-delegation doctrine.

Based upon the foregoing, the Court overrules Defendant's Motion to Dismiss Indictment (Doc. #22), in its entirety.

July 24, 2008

                                          /s/ Walter Herbert Rice
                                          WALTER HERBERT RICE, JUDGE
                                          UNITED STATES DISTRICT COURT

Copies to:

Counsel of Record.